## AVANT *et al.* V. FLYNN, Treasurer.

1.   The failure of the proper officer, who administered the oath to the assessor,
     as required by the statute, to attach his signature and affix his seal of
     office at the time the assessment roll is filed in the office of the clerk,
     is a mere irregularity, which will not authorize a court of equity to set
     aside a tax levied on such an assessment roll.
2.   The collection of a tax will not be restrained on the ground merely that
     it is irregular or erroneous.   Errors in assessment do not render the
     tax void.   As a rule they do not constitute any reason whatever
     against the tax being enforced.   .
3.   When a law creating a board of equalization provides that it may add
     to the assessment roll such property as has been omitted by the owner or
     assessor, but which fails to provide that personal  notice shall be given
     the owner of the time or the place that the board will or contemplate mak-
     ing such addition to the assessment roll, personal notice must be given to
     the owner of the property before such assessment will be legal; but if
     the owner or his agent or representative be present at the time such
     addition was made to the roll, and knew of such addition at the time it
     was made, such knowledge is equivalent to personal notice.

[Syllabus by the Court.   Opinion filed June 19, 1891.]

Appeal from circuit court, Custer county.  Hon. JOHN W.
NOLIN, Judge.

Action to restrain the defendant from collecting certain
taxes levied on the personal property of plaintiffs for the year
1887.   The defendant had judgment.   Plaintiffs appealed.
Affirmed.

The facts are fully stated in the opinion.

*Chauncey L. Wood, Buel R. Wood* and *James W. Fowler*, for
appellants.

An assessment roll is either valid or void when returned,
and to be valid must be returned as the statute provides.
Marsh v. Board of Supervisors, 42 Wis. 502; Morrill v. Taylor,
6 Neb. 236; Lyman v. Anderson, 2 N. W. 732.   Parol evidence
cannot be admitted to explain or supply a necessary record in
tax matters.   Iverslie v. Spaulding, 32 Wis. 394.

The assessment roll was void for want of proper verifica-
tion and the board of equalization and board of commissioners
had no jurisdiction to act upon it, and the tax levied upon it is
void.   Bode v. New Eng. Inv. Co. 42 N. W. 658; McNash v.

Perrine, 16 N. W. 837; Hollan v. Palmer, 12 Neb. 87. A jurat must show that the oath was administered by the person subscribing the jurat. Powers v. Shepherd, 53 Am. Dec. 168. Where an assessment roll is signed by the assessor, but there is no evidence that it was sworn to, a tax levied upon it is invalid. Merriam v. Coffee, 20 N. W. 389; Merriam v. Davey, 36 N. W. 382.

It is only upon sworn testimony that a board of equalization can add to an assessment roll property which has been omitted therefrom and thus change the sworn testimony of a tax payer. Shaw v. Manitowac, 14 N. W. 829. Injunction will lie to restrain the collection of a void tax. Railroad v. Corland, 3 Pac. 134.

A statute authorizing a board of equalization to increase the value of property listed by a tax payer without notice, except such notice as is contained in the statute fixing the time of meeting of the board is unconstitutional. Kunz v. Sumption, 19 N. E. 474; Railroad v. County, 3 Neb. 41; Land Co. v. Buffalo County, 7 Id. 256; Mining Co. v. Neptune, 2 W. R. 150; Paiten v. Green, 13 Col. 329; Dundy v. Rich Co. 8 Neb. 516; Welty on Assessment, pp. 286, 288, 284.

*Edmund Smith*, for respondent.

The assessment roll was actually verified and signed by the assessor, and the failure of the officer who administered the oath to attach his signature and affix his seal is a mere irregularity which did not render the tax levy void. Farmington v. New Eng. Inv. Co. 45 N. W. 191; Bode v. New Eng. Ins. Co. 45, N. W. 197; Frost v. Flick, 1 Dak. 131; Challis v. Commissioners, 15 Kan. 49; Railroad v. Lincoln Co. 30 N. W. 619; Cooley Tax, p. 775-6.

It was shown by the evidence that appellants were actually before the board of equalization at the time of the increase in valuation of which they complain. Further, the statute gives them notice, which they received and acted upon. § 1584, Comp. Laws; Hutchinson v. Board, 23 N. W. 249; Shove v. City of Manitowoc, 14 N. W. 829; Gillette v. Treas. Lyons Co. 1 Pac. 577.

BENNETT, J.    This was an action to restrain the defendant, as collector of taxes of Custer county, from collecting certain personal taxes levied on the property of plaintiffs for the year 1887.    A temporary injunction was issued.    The allegations of the complaint are in substance as follows:    That on the 1st day of April, 1887, the plaintiffs were the owners of 237 head of cattle of taxable age, and were owners of said cattle on the 17th day of May of that year; that the county assessor applied to the plaintiffs to have them list all their property subject to taxation, which they did, and its value was $2,350, but by mistake of the assessor the number of cattle was written down as 120 instead of 237; that afterwards the assessor returned his assessment roll as made for that year, but failed and neglected to make and subscribe to the oath certified by the officer administering it, as provided by law, and failed and neglected to take and subscribe to any oath as the law directs and requires to be attached to the assessment roll, but it was returned without any oath being attached to it; that on the 6th day of July, 1887, the board of commissioners of said county, while sitting as a board of equalization for said county, proceeding upon said assessment roll, did, against the protest of the plaintiffs, increase and raise the valuation of plaintiffs' cattle, listed at $2,350, to the sum of $6,440, and increased the number of cattle from 237 to 400 head, making the number 163 more than the plaintiffs owned on the first day of April, 1887; that by the said unverified assessment roll, and the increase of valuation, and without their knowledge and approval, did increase their taxation in the aggregate sum of $250; that the plaintiffs, as evidence of their good faith, are willing and do tender the full amount of their taxes to be levied on the valuation of $2,350, which is the full value of all their personal property subject to taxation, but ask that the balance be declared invalid, and the collector be restrained from collecting the same.    The answer of the defendant admits the listing of 237 head of cattle, but denies that the plaintiffs fairly and fully listed all their cattle, and that their value was only $2,350; admits that the assessor did fail and neglect to make and subscribe the oath, but denies

that he returned said assessment roll without taking or sub-
scribing to any oath concerning the same. The answer also
admits that on July 6, 1887, the board of equalization of said
county did increase and raise the valuation of plaintiffs' cattle
to the aggregate value of $6,445, and the number from 237 to
400; denies the invalidity of the assessment roll and assess-
ment lists returned by the assessor for the year 1887; denies that
the assessor neglected to verify the assessment roll, as required
by law; denies that the board of equalization unlawfully and
against the protest of the plaintiffs did raise and increase the
number or the value of the plaintiffs cattle, but alleges that
the plaintiffs were the owners of 400 head of cattle of taxable
age on the first day of April, 1887. The cause was tried by
the court sitting as a jury. The temporary injunction was dis-
solved, and the complaint was dismissed. From which judg-
ment and order an appeal was perfected.

The appellants, upon the record and assignment of errors,
insist upon the consideration of the following questions, as in-
volved in the case: (1) If an assessment roll is not ver-
ified, as provided by statute, when it is returned, is it valid or
is it void? (2) If void, has the board of county commissioners
any jurisdiction to levy a tax on the property enumerated in it?
(3) What are the duties and powers of a board of equalization?
(4) Is legislation empowering a board of equalization to in-
crease the amount and value of property listed by a tax-payer
without notice, constitutional? In the case at bar the undis-
puted evidence shows that the assessment roll was actually
verified and signed by the assessor, but the evidence does not
disclose the exact day upon which the roll was returned to the
office of the county clerk. The testimony of Joseph Pilcher
shows that he was the register of deeds and *ex officio* county
clerk of Custer county for the years 1887 and 1888; that the as-
sessor signed his name to the affidavit on the 5th day of July,
1887; and that the oath was administered to the assessor by the
said Joseph Pilcher on that day, but that he failed to subscribe
his name on that day, but afterwards, in July, 1888, he did at-
tach to the affidavit the words: "Subscribed and sworn to be-

fore me this 5th day of July, 1887. [Signed]    J. E. PILCHER, County Clerk." The question then arises, was the failure of the officer who administered the oath to attach his signature and affix his seal of office, at the time the assessment roll was filed in the office of the clerk, a mere irregularity which did not predjudice or tend to predjudice the plaintiff in respect to a substantial right, or was it such an irregularity as authorizes a court of equity to set aside the tax levy as void? Section 1551, Compiled Laws, provides that "the assessor shall take and subscribe an oath, to be certified to by the officer administering it and attached to the assessment roll." It will be noted that no specific time is required for the assessor to take and subscribe the oath, nor for the officer who administers it to certify to it. In the absence of such specific demand it would, however, be presumed that the assessor would take and subscribe the oath, and the officer attach his certificate at the time of or before filing the assessment roll in the proper office. Still, if the oath required by the statute was taken by the assessor, and through inadvertence, carelessness or other cause the officer administering the oath should fail to attach his certificate to the assessment roll, would this irregularity make the assessment void? We think not. The contention of the appellants is to the contrary, and in support of their position we are cited to the cases of Marsh v. Supervisors, 42 Wis. 502; Morrill v. Taylor, 6 Neb. 236; and Lynam v. Anderson, 9 Neb. 367, 2 N. W. Rep. 732. The pertinance and the applicability of a decision is to be ascertained by reference to the statute upon which the decision is based. The statute of Wisconsin in relation to the affidavit of the assessor to the assessment roll is as follows: "Sec. 1063. The assessor or assessors shall annex to the assessment roll, when completed, his or their affidavit, to be made and certified in the following form:    *    *    *    No assessor shall be allowed in any court or place, by his oath or testimony, to contradict or impeach any affidavit or certificate made or signed by him as such assessor." The statute requires that the assessor's affidavit shall be made and annexed at the time the assessment roll is completed. The statute of

Nebraska is the same as Section 1551 of our Compiled Laws. In the case of Marsh v. Supervisors, 42 Wis, 515, an assessment roll was attached, among other things, because neither of the assessors took and subscribed the oath annexed to the assessment roll as required by law. The court says: ''It is apparent that the failure of an assessor to annex his affidavit and return it with the assessment roll is in disregard of a material provision of the statute, and defeats a material safe guard provided for the integrity of the assessment. When the affidavit is omitted in fraud of the statute because the assessment was not made in compliance with the statute, as is the case here beyond reasonable doubt, there could be little difficulty in holding the assessment roll void for want of it; for the statute does not authorize an unverified return, and the assessment roll is *prima facie* positively valid or void when returned, and the verification of the affidavit cannot be supplied by evidence *aliunde*. The assessment may be impeached by evidence *aliunde* against the affidavit when annexed, (Hersey v. Supervisors, 37 Wis. 75;) but the affidavit cannot be supplied, (Iverslie v. Spaulding, 32 Wis. 394.) We were at first disposed to doubt in this case whether, when the affidavit is omitted by accident, and evidence is given to supply its place in support of the assessment, that it was made in good faith, in the manner which the affidavit should have verified, the assessment might not be upheld. But the statute authorizes no assessment roll without the affidavit,—sanctions none; and it is dangerous to relax statutory rules in matters so vital, going to the integrity of the assessment and its compliance with the constitution.'' The court then held that an assessment not verified by the statutory affidavit of the assessor cannot be otherwise verified, and that it was not within the statute, and was not valid for any purpose. We have quoted thus liberally from the opinion because it is in a great measure upon this decision that the contention of appellants is based. But counsel no doubt have overlooked the fact that this case has been virtually overruled by later decisions of the supreme court of Wisconsin:

*First.* In the case of Fifield v. Marrinette Co., 62 Wis 537,

22 N. W. Rep. 707, 708, where the court says: "The conten-
tion of the learned attorney is based upon what was said by
the late learned chief justice in Marsh v. Supervisors, 42 Wis.
502. It must be admitted that the chief justice made use of
language which fully justifies his contention in the case at bar;
but, if we look into the facts which were before the court in
that case, it will be seen that there was no necessity for a dis-
cussion of the question whether a mere omission of an asses-
sor to verify his assessment roll rendered the tax apportioned
upon such assessment roll unequal and necessarily unjust. The
evidence in that case showed that in making the unverified as-
sessment rolls involved in that case the assessors had proceed-
ed in such a way as to make the assessment unequal. * * *.
In that state of the evidence it was wholly unnecessary for the
court to determine what would be the effect of a mere omission
to verify the assessment roll." Thus it will be seen that the
same court which rendered the decision in the case of Marsh v.
Supervisors, 42 Wis. 502, have held that all that portion of
that decision relating to the invalidity of an unverified assess-
ment roll is in the nature of an *obiter.* Upon a further examin-
ation of that case it will appear that the counsel for the appel-
lant did not attach to that fact much importance, because it
was not argued, and but one authority was cited in support of
the proposition,—Van Rensselaer v. Witbeck, 7 N. Y. 517.

*Second.* In a still later case, (Railroad Co. v. Lincoln Co.,
67 Wis. 478, 30 N. W. Rep. 619,) the validity of the assessment
of 1876—its existence even—is denied for the reason that the
document in the clerk's office of the town, in which the lands
were situated, purporting to be the assessment roll of such
town for 1876, bears no signature of or verification by the as-
sessor; neither does it appear to have been made by him. The
court says: "Do the irregularities and defects in the as-
sessment and levying of the taxes of 1876, or either of them,
render the tax proceeding so utterly null and void that it can
correctly be said that no taxes were assessed against plaintiff's
land for that year? * * * We conceive that the judgment
of this court in Fifield v. Marinette Co., 62 Wis. 532, 22 N. W.

Rep. 705, answers the above question in the negative. In that case, as in this, the document purporting to be the assessment roll, and which was the foundation of all the subsequent tax proceedings, was not signed or otherwise verified by the assessor. It was held that the tax certificates were not necessarily void in equity because of such omission. * * * Counsel for the plaintiff relies mainly upon certain language found in the opinion of the late chief justice in Marsh v. Supervisors, 42 Wis. 502, and Philleo v. Hiles, Id. 527, to support the opposite view. This language is considered and restricted or explained in Fifield v. Marinette Co., 62 Wis. 532, 22 N. W. Rep. 705. It has ceased to be authority for the proposition maintained by counsel. We reach the conclusion, therefore, that the assessment and tax levy under consideration are not nullities." These latter decisions of the Wisconsin supreme court effectually overrule and dispose of the case of Marsh v. Supervisors, 42 Wis. 502, as an authority upon the invalidity of an unverified assessment roll, and in our opinion the later decisions are founded on better reason, and establish the safer rule,—that such assessment rolls are not nullities. A tax will not be restrained on the ground merely that it is irregular or erroneous. Errors in the assessment do not render the tax void, nor are they necessarily injurious. As a rule, therefore, they do not constitute any reason whatever against the tax being enforced. Moreover, the law has provided remedies for all such mere irregularities and errors as do not go to the foundation of the tax, and parties complaining must be confined to these. Cooley Tax'n, 776. From this view of the first question, it becomes unnecessary to consider the second.

As to the duty of the board of equalization in regard to changing the assessment without giving formal notice to the tax payer. The statute, (Sections 1584, 1585, Comp. Laws) creates a board of equalization for each county, and requires it to meet on the first Monday in July of each year for the purpose of equalizing and correcting the assessment roll as filed by the assessors; and in order to equalize and correct such assessment roll, it may change the valuation and assessment of any

property, real or personal, upon the roll, by increasing or diminishing the assessed valuations for the purpose of rendering taxation uniform, provided the aggregate assessment is not materially changed. The board may also place upon and add to the assessment roll any property, real or personal, subject to taxation, which has been omitted, either by the owner or the assessor, and place upon the same a reasonable, just, and uniform taxation. The board has the power to equalize the classes of property generally, and make the taxes on such uniform. This is the general purpose of equalizing boards, and it is a salutary and wise provision of the statute. But while the statute provides that it may add to the assessment roll such property as has been omitted by the owner or assessor, it fails to provide that notice shall be given to such person that the board will or contemplate making such addition; nor does it provide the manner in which such property shall be valued, or the amount of the same be ascertained. The appellants contend that such a statute is in violation of the constitution of the state. This contention is not without some force. In the case at bar it appears from the record that the board of equalization did make new and largely increased assessments of appellants' personal property, raising the number of their cattle from 237 to 400, and increasing the value from $2,350 to $6,440. The acts of the board appear valid if a board of equalization can reassess property without giving notice to the owner. It no doubt is contended upon the part of the board that the statute gives absolute power to reassess property as it may choose. As the statute fixes the time when the board shall meet, it may exercise its powers without giving notice to the owner of property. This position seems utenable, because, if this were the case, it would be incumbent upon every tax payer in the county to be at the meeting of the board, and watch their proceedings during their session, in order to protect his right of property. It certainly would be dangerous to establish such a precedent, and it can hardly be supposed that the legislature intended to confer such a power upon the board; and, if it did, we could

hardly uphold such an enactment. The constitution provides that "no person shall be deprived of * * * property without due process of law." We need not enter into any elaborate discussion of the meaning of the words "due process of law." This has been done in numerous judicial decisions. These words are held, under the liberal interpretation given to them, to protect the life, liberty, and property of the citizen against acts of mere arbitrary persons in any department of the government. Westervelt v. Gregg, 12 N. Y. 212; Rowan v. State, 30 Wis. 146. Mr. Justice EARL, of the court of appeals of the State of New York, in the case of Stuart v. Palmer, 74 N. Y. 191, says: "It may, however, be stated generally that due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this." It was held accordingly that a law imposing assessments for a local improvement, without notice to the owner of the assessed property, and a hearing or an opportunity to be heard, was unconstitutional. So, in People v. Supervisors, 70 N. Y. 234, it is said: "Due process of law requires that a party shall be properly brought into court, and that he shall have an opportunity when there to prove any fact which, according to the constitution and the usages of the common law, would be a protection to his property. Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense, to be heard, by testimony or otherwise, and to have the right of controverting by proof every material fact which bears on the question of right in the matter involved. If any question of right or liability be conclusively presumed against him, this is not due process of law. See Land Co. v. Buffolo Co., 7 Neb. 258; Hutson v. Protection Dist. (Cal.) 16 Pac. Rep. 549,— where it is held that in case of an assessment an opportunity should be given the owner to be heard, otherwise it is "without

due process of law." In California the statute requires the board of equalization to meet on the first Monday in August, and provides that it may hold sessions from time to time until the second Monday in September. It also gives the board power to add to or deduct from any valuation, whether the said sum was fixed by the owner or the assessor. This statute came before the supreme court of that state in the case of Patten v. Green. 13 Cal. 329, where the court says: "It would be a dangerous precedent to hold that an absolute power resides in the supervisors to tax land as they may choose without giving notice to the owner. It is a power liable to great abuse. The general principles of law applicable to such tribunals oppose the exercise of any such power. The publication of notice of the sittings of the board amounts to no protection to the owner, for the sessions of the board are or may be from the first Monday in August until the second Monday in September, and it would hardly be expected that every tax payer is to wait upon the board all this time to see if his taxes are to be increased. * * * There can be no considerable difficulty in giving this notice, and we think the best interests of the state require it." Any other construction seems to us to be at the sacrifice of those great principles upon which private right reposes for security. In the case at bar, if the facts had shown that the appellants' assessments were raised without notice, we should have further considered their contention on this point, but upon examination of the record we find that at the time of the action of the board of equalization in raising their assessment they were present, and protested against such action. In the fifth paragraph of appellants' complaint we find the words: "That on the 6th day of July, 1887, the board of Custer county, while sitting as a board of equalization, * * * did unlawfully, and against the protest of these plaintiffs, increase and raise the valuation of plaintiffs' said cattle," etc. The plaintiffs certainly could not protest against the acts of the board unless they were present by themselves or an agent, or at least had full knowledge of what they were protesting against; and this allegation of their own must be taken as con-

clusive, in the absence of proof to the contrary. Again, in the testimony of John V. Avant, it appears that the witness was present at the meeting of the board when the assessment was raised, and he says: "The board of eqalization increased the number to 400 head. I was there, and protested against it." It is true that this witness is not one of the appellants, but the record shows that he was the father of them, and living with them, and an active employe of theirs, and appeared to take a deep interest in their affairs. Again, the record shows that upon the trial the cause was submitted to the court, and one of the findings of fact was "that plaintiffs were present and had notice" of the action of the board. A finding of fact must always be based upon evidence, and we think this finding of the court was based upon such evidence as would warrant it in so finding. The certificate of the clerk to the bill of exceptions on the record does not show that the evidence set out was all the evidence introduced at the trial. Consequently the well-known rule will prevail that, in the absence of such a certificate, the appellate court will presume that there was evidence to support a verdict or a finding of fact by the court. The objection to the statute creating a board of equalization and defining its duties, in that it provides no notice to the tax-payer of the intention to raise or alter his assessment, has no application or force in the case at bar, because at the time the raise was made the appellants enjoyed all the rights and privileges they could have had if formal notice had been served upon them. No error appearing to the detriment of the appellants in the trial of the cause, the judgment of the court below is affirmed. All the judges concurring.