## TRIPP V. CITY OF YANKTON.

1. Comp. Laws, § 4937, providing that "any pleading may be once amended by the party of course," etc., does not authorize a second amendment without leave.

2. A right to amend as of course, after answer served, is waived by an application for leave to amend.

s. A cause of action to enjoin a sale of lots for special taxes, and one for damages caused by street improvements, may be united in the same complaint, as they arise out of "injuries to property" occasioned by "transactions connected with the same subject of action," within Comp. Laws, § 4932.

4. Const. Art. 10, § 1, requiring the legislature to provide by general law for the organization of cities, and Laws 1890, Chap. 37, providing for a system by which cities may surrender their charters and organize under a general law as provided therein, do not repeal the special charter of a city failing to organize under such law.

5. Yankton's charter, authorizing special assessments, is not unconstitutional, as taking property without due process of law," for want of a provision for notice to property owners, as such provision may be made by ordinances as authorized by the charter.

6, An ordinance assessing plaintiff's lot the same amount per front foot for building a sidewalk as is assessed against an adjacent lot is not repugnant to the Constitution requiring equality of taxation, where both lots have the same number of feet abutting on the street, though the adjacent lot is twice as deep.

(Opinion filed March 5, 1898.)

Appeal from circuit court, Yankton county. Hon. E. G. SMITH, Judge.

Action to cancel a special tax. Defendant had judgment, from which and from an order denying his motion for a new trial, plaintiff appeals. Reversed.

The facts are stated in the opinion.

*C. H. Dillon* and *R. B. Tripp,* for appellant.

*A. H. Orvis,* for respondent.

FULLER, J. To recover alleged damages occasioned by an excavation by the defendant, a municipal corporation, on the

south and west sides of block 50, Yankton, and particularly the west end of plaintiff's lots 7, 8 and 9 thereof, and to cancel and restrain the collection of a special tax levied on account of a sidewalk constructed of cement on the grade thus prepared, this action was instituted, and the appeal is by plaintiff from a judgment for defendant and an order overruling a motion for a new trial. Subsequently to the answer of respondent, the complaint was amended by leave of court, and served January 4, 1897. On the 23d day of the same month, after the amended complaint had been answered, appellant attempted, without leave of court, to serve a proposed amendment, but counsel for respondent refused to accept service thereof, and at the trial objected to the same being considered a part of the amended complaint for the following reasons, indorsed on the back thereof, bearing date January 23, 1897: "(1) This case has been argued before the court so far as it relates to the injunction upon the issues as then made by the pleadings. (2) The original complaint in this case was served in September, 1896, and an amended complaint, by leave of court, was served on January, 4, 1897. No permission or leave of court has been obtained for again amending said complaint, and the statute does not give the right to a party to amend, as of course, an amended pleading, but only an original pleading."

The ruling of the court in sustaining this objection was assigned as error, and although, upon application of appellant's counsel, the amendment was allowed, a decision of the point is requested. A complaint may be once amended of course, before the period for answering it expires, or at any time within twenty days after service thereof or within twenty days after the service of an answer or demurrer to such pleading (Comp. Laws, § 4937); but no right or authority is given for any further amendments as of course without leave first obtained. The absolute right to amend without notice, costs or prejudice, when once exercised within the statute, ceases to exist, and all further amendments are addressed to the sound

discretion of the trial court. White v. Mayor, etc., of City of New York, 14 How. Prac. 496; Jeroliman v. Cohen, 1 Duer, 629. The unquestioned right to amend as of course an amended pleading did not at common law exist inherently; and the statute, designed to obviate delay and vexation, is susceptible of no such construction. Moreover, the right to amend as of course, after answer served, is waived by an application for leave to amend, and thereby becomes discretionary with the court. 1 Enc. Pl. & Prac. p. 631; Hamilton v. Carrington (S. C.) 19 S. E. 616.

The object of the first cause of action stated in the complaint is to perpetually restrain the city from selling the premises described, on account of the special tax levied for a sidewalk constructed in June, 1896; and the sixth paragraph thereof, added by way of amendment, relates to damages sustained in the alleged sum of $200, occasioned by changing the surface of the ground on the west side of the property from its original state to its present grade, two and one-half feet below the natural condition, with reference to which appellant's dwelling house and other improvements upon the premises were made or constructed. The second cause of action is to recover for further injury to the premises occasioned by the alleged unlawful acts described in paragraph 6, above noticed; and the third cause of action is for damages sustained in the year 1894, by reason of an excavation two feet deep and eight feet wide made along the south of lot 9 thereof, in front of appellant's residence, for the purpose of constructing a sidewalk thereon, during the month of June of that year.

It is conceded that the second and third causes of action, severally stated, were for injuries to property, and therefore properly united in the same complaint; but a demurrer on the ground that several causes of action were improperly united was interposed and sustained as to the third cause of action, upon the theory that said claim for damages occasioned to the premises in the year 1894 and the first cause of action did not arise

"out of the same transaction, or transactions connected with the same subject of action," and that a suit to cancel a void assessment, and for an injunction to prevent a cloud upon the premises arising from an illegal tax sale, is not for injury to property, within the meaning of the following statutory provision: "The plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they all rise out of: (1) The same transaction or transactions connected with the same subject of action. (2) * * * (3) Injuries with or without force, to person and property, or either. (4) * * * (7) * * * But the causes of action so united must all belong to one of these classes." Comp. Laws, § 4932. This statute authorizes the joinder of causes to avoid a multiplicity of suits, enacted with due consideration for the convenience and economy of litigants, is in full accord with the reformed system of procedure, and entitled to a liberal construction, with a view to effect its object and promote justice. Comp. Laws, § 4763.

Assuming, as we probably should, that the first and third causes of action did not arise out of the same transaction, the question, then, is whether the various acts complained of and relied upon as constituting the substantive ingredients of each of such causes of action, respectively, are "transactions connected with the same subject of action." No construction universal in its application appears to have been given the expression, "transactions connected with the same subject of action," but it seems to have been thus indefinitely phrased, to enable courts of equity to interpret its meaning generally in the manner most likely to subserve the ends of justice in particular instances, where more than one cause of action, whether legal, equitable, or both, may well be settled in a single controversy. 1 Enc. Pl. & Prac. p. 185; Pom. Rem. & Rem. Rights, 475; Phill. Code Pl. 197. The right, as an owner, to occupy without interruption, and continuously maintain, the premises in a con-

dition most suitable to his own notion is the foundation of every cause of action set up in the complaint, and the alleged invasions of this one right constitute a single "subject of action," common to the different causes of action pleaded, the object of which is a judgment for damages and a decree as prayed for. Scarborough v. Smith, 18 Kan. 399; Maxw. Code Pl. 347. Appellant, therefore, being the absolute owner and actual occupant of the premises described in the complaint, all the acts or transactions on the part of respondent which invade his legal primary right of peaceful enjoyment and continued possession are connected with one and the "same subject of action" or matter concerning which this particular legal controversy arose. McHard v. Williams, 8 S. D. 381, 66 N. W. 930; Aultman Co. v. Ferguson, 8 S. D. 458, 66 N. W. 1081.

Independently of the foregoing statute, the practice is well established in courts of equity, having jurisdiction of an action for any purpose, to retain the cause, and administer a complete remedy, rather than require the party to institute another suit in order to obtain that to which he is, according to his complaint, justly entitled. Moreover, injury to real property is effected by that which impairs its value, and the casting of a cloud upon the title, that will ultimately result in the absolute devestment thereof, as described in the first cause of action, is usually denominated "irreparable injury," and we therefore conclude that the three causes of action under consideration arise out of "injuries to property" occasioned by "transactions connected with the same subject of action." It follows, if we are right, that the demurrer was improperly sustained, and it is so held.

The third cause of action being thus eliminated, the question of damages for grading done on the west side was sent to a jury, and resulted in a verdict adverse to appellant. By stipulation of counsel, all other issues were tried to the court, who found for respondent; and, adopting the finding of the jury that no damage had been sustained, a decree was entered dis-

missing the action.   Appellant, assailing the very groundwork of the proceedings complained of, contends that, by operation of Section 1 of Article 10 of the Constitution, and Chapter 37 of the Laws of 1890, the special charter of the city of Yankton, under which respondent acted, was repealed.   That section declares that "the legislature shall provide by general law for the organization and classification of municipal corporations," and Chapter 37 is a general incorporation act, which provides a legislative system by which cities existing under special charters may surrender the same and organize under the provisions of this chapter.   Whenever a petition therefor is presented, signed by one-eight of the legal voters, the mayor and city council shall, but not oftener than once in each year, submit the question to the qualified electors, and if a majority of the votes cast at such election be for organization under the general law, the city thenceforth shall be deemed to be thus organized, and the courts shall take judicial notice of its existence.   The scheme above provided, when viewed in the light of later supplementary statutes recognizing the continued existence of, and confering additional powers upon, cities organized under special charters, most forcefully negatives the proposition that respondent, having failed to organize under the general law within a reasonable time, has ceased to exist as a municipal corporation, and the position is clearly not sustainable.   Chapters 19, 86, Laws 1891; Section 1, Chap. 126, Laws 1893; Section 1, Chap. 140, Laws 1895.

Appellant maintains that the charter, if otherwise operative, is unconstitutional and void, so far as applicable to this case, in that it makes no provision for notice to property owners, as the right to be heard before an assessment like the one here presented becomes a fixed charge.   As the provision expressly authorizing the respective acts now complained of imposes, by necessary implication, and as an incident to lawful procedure, the duty of providing by ordinance for the required notice and an opportunity to be heard, the point is not well taken.

Moreover, Sec. 82 of Art. 6 of the city charter provides generally that "when * * * the power is conferred upon the mayor and council, to do and perform any act or thing, and the manner of exercising the same is not specifically pointed out, the mayor and council may provide, by ordinance, the details necessary for the full exercise of such power." Section 22 of the same article is a provision authorizing the mayor and city council, whenever they deem the construction of a sidewalk, for which a special tax may be levied, necessary, to so declare by resolution; "and, when any sidewalk is ordered, such resolution may provide that it shall be laid on grade, or that it may be laid on an approximate grade to conform to the surface of the ground, where the surface of the street does not conform to grade; and such resolution shall be published for four consecutive weeks in the official newspaper of the city; and if a majority of the resident owners of the property liable to taxation therefor, of any block or square, shall not, within twenty days thereafter, file with the city clerk of said city their protest against such improvement, then the mayor and council shall have power to cause such improvement to be made and to contract therefor, and levy and collect taxes as herein provided." It is conclusively shown that the ordinances under which the city acted provided for due notice and ample opportunity to be heard in opposition to the sidewalk and proposed special assessment; that appellant, within the period specified in the published resolution, filed written objections thereto, and, at the time and place designated, appeared before the mayor and city council, and orally stated his reasons therefor, notwithstanding which said resolutions was by more than two-thirds vote of the members of the council confirmed. In our opinion, the ordinances complained of are fully authorized by the city charter, and are not open to the constitutional objection that the owner was deprived of his property without "due process of law."

In Evans v. Fall River Co., 68 N. W. 195, this court, in conformity with the universal rule, held that "an opportunity

to be heard at some stage of the proceedings is a condition precedent to the authorized seizure and sale of property for delinquent taxes"; but in this instance appellant was given, before the special assessment became a permanent charge, a timely opportunity to appear before and be heard by a legally constituted tribunal, as to the fairness and legality thereof; and the fact that the ordinance, which was clearly within the charter, did not provide that notice should be personally served upon him is immaterial. In Gilmore v. Hentig (Kan. Sup.) 5 Pac., at page 791, Mr. Justice Valentine, speaking for the Kansas court, says: "It is not necessary in any case that the notice should be personally served upon the property owner, or that the proceeding shall be a judicial proceeding; but any notice that will enable the property owner to procure a hearing before some officer, board, or tribunal, and to contest the validity and fairness of the taxes assessed against him, before the same shall become a fixed and established charge upon his property, will be sufficient. Nor is it necessary, in any case, that the notice should be given before the taxes are levied. All that is necessary is that the notice shall be given before the taxes shall have become such a fixed and permanent charge that the property owner can have no adequate remedy to contest their validity or fairness." To the same effect, see *In re* De Peyster, 80 N. Y. 565; Gatch v. City of Des Moines (Iowa), 18 N. W. 310; Allen v. City of Charleston, 111 Mass. 123; Paulsen v. City of Portland, 149 U. S. 30, 13 Sup. Ct. 750; Hildreth v. City of Lowell, 11 Gray, 345. As bearing upon the proposition, we cite Avant v. Flynn, 2 S. D. 153, 49 N. W. 15; Billinghurst v. Spink Co., 5 S. D. 84, 58 N. W. 272.

We deem it unnecessary to copy the ordinances authorizing the acts under consideration, or the resolution of the city council declaring the improvement necessary, and describing the property to be affected, the character of the sidewalk to be built, and prescribing minutely the successive steps to be taken to construct the same and enforce payment therefor, all of

which have received careful attention, and are found to be in substantial conformity with the charter, and in no respect repugnant to the constitution.

Appellant's premises are situated upon the corner at the intersection of Fifth and Walnut streets, and, according to the city plat, consist of the west half of lots 7, 8, and 9 of block 50, each half lot being 75 feet in length and 44 feet in width, thereby abutting 132 feet on Walnut street, and 75 feet on Fifth street—all of which have for many years been used together and occupied as one residence property, upon which stands a dwelling house, facing Walnut street, together with certain outbuildings and improvements used in connection therewith. The east half of said lots 7, 8, and 9 are, and for many years have been, owned by a stranger to this suit; "and have been used exclusively as one residence property for more than 20 years last past, the same being 75 feet abutting on Fifth street, and extending back, to the south line of said lot 6, 132 feet; that there is, and has been for more than 20 years last past, a dwelling house erected and standing thereon facing Fifth street; that on the east half of said lots 7, 8, and 9 are outbuildings, and the same, together with the east half of said lots, are all used in connection with said dwelling house." The cement walk declared necessary, and as constructed, extends across the west side of block 50, along the west end of lots 1, 2, 3, 4, 5, 6, 7, 8, and 9 thereof, connecting at a right angle on the same elevation with a similar walk constructed by appellant in the year 1894 along the south line of said premises, by reason of which, it is claimed, no additional burden should be imposed by way of assessment for sidewalk purposes. The property, being situated upon a corner has a double frontage, and, in a proper case, both sides may be assessed according to frontage, for the purpose of defraying the expense of building a sidewalk for the entire length thereof. Morrison v. Hershire, 32 Iowa 271; Wilbur v. City of Springfield, 123 Ill. 395, 14 N. E. 871; City of Moberly v. Hogan, 131 Mo. 19, 32 S. W. 1014; 2 Desty, Tax'n, 1263; Elliott, Roads and S. 391.

Sections 18 and 19 of the charter authorize the mayor and city council to defray the expense of building a sidewalk by a special tax levy "upon the lots or parts of lots and pieces of ground adjacent to and abutting upon the streets   *   *   *   improved or to be improved.   Such taxes shall be levied on all the lots or parts of lots and lands bounding or abutting on such improvement, said tax to be either in proportion to the feet front so bounding or abutting, or according to the value of such lots or parts of lots or lands;" and in this instance the "front foot" rule was employed, and, the lots all being of equal width fronting upon the street, an amount was levied upon each of appellant's half lots equal to that imposed upon lot 6, twice as deep, and of the same width, immediately adjacent thereto, and owned by one Eva Atwater.   Counsel maintains that such proceeding was in flagrant violation of the constitutional doctrine requiring equality of taxation, but the rule contended for has no intrinsic application to a special assessment levied for a local purpose, according to the "front foot" system, when, as in this case, the levy is laid ratably upon the frontage of all property similarly situated, and uniformly benefitted by the improvement to enforce payment for which the burden is imposed.   It is clearly within the reasonable exercise of the taxing power to make frontage the basis of apportionment, and as lots 6, 7, 8, and 9 were each exactly 44 feet in width, abutting on the street, a levy of 95 cents per lineal front foot, amounting to $41.80 per lot, was sufficiently uniform to meet all the requirements of the method.   For a similar purpose, about $450 was levied against a triangular lot 31 feet wide at one end, and which, extending along the street, diminished in width until it reached a point.   In applying the front-foot rule, it was held to be "no defense against the claim that the property is but a narrow strip along the street, and not worth the amount of the assessment."   City of Harrisburg v. McCormick, 129 Pa. St. 213, 18 Atl. 126; Whiting v. Quackenbush; 54 Cal. 306.   In Cincinnati v. Oliver, 31 Ohio St., at page

377, the court says that it is "wholly inadmissible to suppose that the legislature intended that the assessment upon the same tract or parcel of land, if levied according to its taxable valuation, should be limited to the usual depth of lots by the average of the two adjoining blocks; but, if levied by the frontage, the assessment should extend through the entire tract, without reference to its depth." Beaumont v. City of Wilkesbarre, 142 Pa. St. 198; 21 Atl. 888; White v. People, 94 Ill. 604.

It is further maintained that the grade ordinance, making the threshhold to the corner door of the First National Bank "the bench or initial point from which all grades within the city are computed," is void for uncertainty; but, from a careful consideration of the entire ordinance and other provisions bearing upon the point, we are convinced that the position is untenable.

After a careful examination of all the questions presented, our conclusion is that the charter of respondent and the ordinances enacted thereunder, and to which our attention has been called, are not unconstitutional for any of the reasons urged, and that the proceedings of the mayor and city counsel thereunder should be sustained.

As noticed earlier in this opinion, we think it was substantial error to sustain the demurrer to appellant's complaint, and for that reason the judgment is reversed, and the case remanded for further proceedings.

Rehearing granted, June 15, 1898.