BEVERIDGE, Plaintiff, v. BAER, Director of Taxation, et al, Defendants.

(241 N. W. 727.)

(File No. 7345.   Opinion filed March 15, 1932.)

*Danforth & Davenport, Boyce, Warren & Fairbank, Christopherson & Melquist, Bielski & Elliott, Teigen & Davis, Blaine Simons, Bailey & Voorhees,* and *Judge & Chapman,* all of Sioux Falls, for Plaintiff.

*M. Q. Sharpe,* Attorney General, and *Charles P. Warren,* Assistant Attorney General, for Defendants.

RUDOLPH, J. The plaintiff is the owner of real property together with a structure thereon located in the city of Sioux Falls. The structure on this property was assessed in 1931, by the local assessor, at the value of $15,100. At the meeting of the city board of equalization of Sioux Falls, O. S. Thompson, Carl Nielson, and Joseph E. Johnson, all taxpayers of Minnehaha County, personally, "and as a Tax Committee of Minnehaha County Farm Bureau," appeared and protested that the plaintiff's property had been undervalued by the assessor. The city equalization board made no change in the valuation, whereupon an appeal was taken by the above-named persons to the county board of equalization of Minnehaha county. The county board refused to make any change in the original assessment. Thereafter there was filed with the Division of Taxation of the state "Exhibit B," which in words and figures is as follows:

"Appeal from Action of the Minnehaha County Board of Equalization:

"To the Honorable Board of Equalization of the County of Minnehaha, South Dakota.

"Gentlemen: You will take due notice that the undersigned

residents and taxpayers of Minnehaha County, South Dakota, having appealed to your honorable board from the action of the local review board of the city of Sioux Falls in fixing the 1931 equalized value for tax purposes of the following described property, to wit: Harriett Beveridge-Structure E 64 ft. Lots 7, 8 and 9 Block 26-J. L. Phillips Add-Sioux Falls at $15,100 That no relief having been granted and that said value does not represent the full and true value of said property; and we hereby respectfully appeal from your action to the State Board of Equalization, Division of Taxation, Pierre, South Dakota.

"Dated at Sioux Falls, South Dakota, this 25th day of July, 1931.

"For ourselves, individually and as members of the Tax Committee of the Minnehaha County Farm Bureau.

"[Signed]   O. S. Thompson.<br>
"Carl Nielson.<br>
"Joseph E. Johnson."

There was also filed with the Division of Taxation an instrument, signed by the three men above named, asking that an investigation be made of the alleged undervaluation of the plaintiff's property and other property in Sioux Falls, by the division of taxation. Thereafter there was served upon the plaintiff a notice of hearing and order to show cause, setting forth that a hearing would be held in the courthouse, city of Sioux Falls, S. D., on the 11th day of August, 1931, at 3 o'clock p. m., and directing the plaintiff to show cause at such hearing why the assessment of her property should not be increased. The notice was signed "Division of Taxation, B. W. Baer, Director." The plaintiff appeared at the hearing, filed an objection to the jurisdiction of the division of taxation to raise her assessment, setting up that, should her assessment be raised as contemplated, it would be taking her property without due process of law, and submitted evidence to the effect that her property was not undervalued. The director of taxation made a further personal investigation and ordered the assessment of the structure on plaintiff's property increased to $22,000. By its order the division of taxation ordered the county auditor of Minneheha county to correct the assessment records of his office for the year 1931 to the end that the assessed value of the structure

on plaintiff's property will stand assessed and equalized at a value cf $22,000. The case is here as an original proceeding upon a writ of certiorari issued by this court. The question for our determination is whether the increase of plaintiff's assessment was valid, under the facts above set out. Exceptionally well-prepared briefs have been submitted by counsel for both plaintiff and defendants. From a consideration of these briefs and the statutes of this state it is very apparent that there is no little confusion in our law with reference to the "State Tax Commission," "Board of Equalization," and "Division of Taxation," which should be clarified by legislative enactment.

[■] The first question, necessary for our determination is: Was jurisdiction acquired to make the increase in the assessment, through the attempted appeal as set forth above? The statute authorizing an appeal from the county board of equalization to the state board of equalization is section 6734, Rev. Code 1919, which provides as follows: "Any person feeling aggrieved by the action of the county board of equalization relative to the assessment of his property may, within thirty days after the decision of such board, appeal to the tax commission as a board of equalization for a determination of such grievance; provided, nothing in this section shall be construed to prevent an appeal to the circuit court as provided in this chapter."

It is apparent from Exhibit B, the purported notice of appeal in this case, that there was no attempt to appeal from a decision of the county board with reference to any property of the purported appellants. The notice of appeal refers only to property owned by the plaintiff in this action. The statute only allows an appeal to any person feeling aggrieved relative to the assessment of "his property." There is no showing at what value appellant's property was assessed. So far as this record discloses, the purported appellants were perfectly satisfied with their own assessments; their only complaint was that this plaintiff was getting off too easy. The defendants here, however, take the position that a tax payer is "aggrieved by the fact that other property of the same class is assessed at a lower comparative valuation than his own." That may be true, but there is no showing here what the comparative assessments were in Minnehaha county. Therefore, even under the contention of the defendants, there is no showing that the ap-

pellants to the state board were aggrieved in the assessment of their property. They (the appellants to the state board) are not complaining because of the assessment of their property. Had they complained because of the assessment of their property, an entirely different question would have been presented for our determination, should it then be contended that in the assessment of their property they were aggrieved because some one else was under assessed. Should the construction of the statute contended for by the defendant prevail there would be no good reason why a taxpayer in Lawrence county could not appeal from this decision of the Minnehaha county board the same as a taxpayer of Minnehaha county. True, the taxpayer in Lawrence county would be aggrieved only to the extent that state levies would be affected by the undervaluation of plaintiff's property, while a taxpayer of Minnehaha would be aggrieved to the extent that both state and county levies were affected, but the statute does not fix any degree of the extent a person must be aggrieved before he has the right of appeal. Further, the extent to which the taxpayer in Lawrence county or Minnehaha county would be aggrieved would be determined by the amount of property on which he paid taxes. We do not believe the construction of this appeal statute, as contended for by the defendants, is sound. There is no showing that the appellants were aggrieved in the assessment of their property. We therefore hold that no jurisdiction was acquired to increase this assessment by this attempted appeal. The defendants rely to some extent upon the case of Bagley Elevator Co. v. Butler, 24 S. D. 429, 123 N. W. 866, wherein this court held that a party whose property, though assessed at less than its value, is assessed much higher than that of other taxpayers, has only the remedy of asking that the value of other property be raised and not that his be lowered. Without affirming the correctness of the statement of the law as announced in that case, it is evident, under the construction we have herein placed upon the attempted appeal and the statute (section 6734, Rev. Code 1919), that the case is not helpful. In this connection it is also pointed out that the appellants to the state board under section 6727, Rev. Code 1919, had their right of appeal from the decision of the county board to the circuit court, which right was saved for them in section 6734, Rev. Code 1919.

■ ■ No jurisdiction to increase this assessment having been acquired because of the attempted appeal, the next question which is presented is: Was there, under the facts presented, jurisdiction to increase the assessment independent of the appeal? Section 6735, Rev. Code 1919, provides as follows: "The tax commission shall have power to equalize the assessment of all property in this state between persons of the same assessment district, between cities, towns and townships of the same county, and between different counties of the state, and the property assessed by such commission in the first instance, such power to be possessed by such commission regardless of any limitation of valuation."

Section 6736, Rev. Code 1919, as amended by chapter 105, Laws of 1923, is in part as follows: "The tax commission shall sit as a state board of equalization commencing on the first Monday of August each year. It has power and is required to equalize and to assess, if necessary, the property of any person, partnership, association, company or corporation so that it shall be assessed as required by law."

The defendants contend that, independent of any appeal, the above-quoted sections of our code give to the tax commission, sitting as a state board of equalization, the power to increase individual assessments, and that this power is now lodged in the division of taxation. Because of our views regarding the constitutionality of the above statutes, in so far as concerns the attempt to vest in the state board of equalization or any other body, the power to increase individual assessments, it becomes unnecessary for us to decide whether the Legislature in enacting the above statutes intended as a matter of fact to vest this power as contended by the defendants. For the purposes of this opinion, without so deciding, it may be conceded that the above sections attempted to give to the division of taxation, when sitting as a board of equalization, the power to raise individual assessments, and that, in this case, this purported power was exercised in the manner in which it was attempted to be given. Conceding all of this, we are of the opinion that the attempt to give this power, in the manner in which it was attempted to be given, is unconstitutional, in that it is violative of section 2, art. 6, Constitution of South Dakota, which provides, "No person shall be deprived of life, liberty or property without

due process of law." This power, if given as contended for by defendants, would be an arbitrary power, for which there is no review provided either by appeal to a court or any other body. What constitutes "due process" in matters of taxation has been a much-discussed subject, and the basis of innumerable decisions. However, it is a general rule that "due process" requires that, after an assessment had been made by an assessor, it cannot be increased by a reviewing board without notice to the taxpayer or opportunity to be heard. Cooley on Taxation (4th Ed.) vol. 3, page 2274; Avant v. Flynn, 2 S. D. 153, 49 N. W. 15, 18. In distinguishing the case of Avant v. Flynn, supra, from the case then under consideration, this court said in the case of Billinghurst v. Spink County, 5 S. D. 84-92, 58 N. W. 272, 274: "The distinction to be observed between that case and the one under consideration is that in the former the owners had listed their property, and the assessor had placed the same upon the assessment roll; and in such a case the owner has a right to presume that he has done all the statute requires of him, and that no change will be made that will increase his burden without notice or opportunity to be heard as to the justice and equity of the contemplated action of the board in relation thereto."

Notice of the increase of an individual assessment being necessary, the next question which arises is: What constitutes notice? In this connection, it must be observed that the above statutes purporting to give to the state board of equalization this power to increase individual assessments provide for no notice to the individual, except the statutory provision fixing the time for the commencement of the meeting of the board. Is this a sufficient notice to constitute "due process," when it comes to raising individual assessments? The fact should be kept in mind that this is not a horizontal increase of all property in the county, or in the taxing district, or a horizontal increase of all of a certain class of property in the county or in the taxing district, but is an increase of an individual's assessment, independent of other property of the same class in the county or in the taxing district. This distinction is important. This question of the power of a state board of equalization to make a horizontal increase of assessments of property, under a statute prescribing no notice, except such as is given by the fact that the time of meeting of the

board is fixed by law, is to our minds best presented in the case of Bi-Metallic Invest. Co. v. State Board, 239 U. S. 441, 36 S. Ct. 141, 142, 60 L. Ed. 372, wherein it was held that notice other than that given by the statute in fixing the time of meeting of the board is not required, where a general increase is made by a board of equalization of the assessed valuation of the taxable property in a given division or district. See, also, People ex rel Bracher v. Orvis, 301 Ill. 350, 133 N. E. 787, 24 A. L. R. 325, and note 24 A. L. R. 331. However, recognizing that individual assessments are affected by these horizontal increases, there are practical reasons underlying the holdings above referred to which do not apply to the case under consideration. As pointed out by Mr. Justice Holmes in the Bi-Metallic Case, supra: "Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. * * * There must be a limit to individual argument in such matters if government is to go on."

These cases, because of the necessities of government in matters of taxation, extend the general rule that, wherever actual notice is impracticable, the requirement of due process is satisfied by substituted or constructive notice, to a point where the only constructive notice is that contained in the statutes fixing the time of meeting of the board. Undoubtedly, the necessities of government demand this construction under the facts presented in cases above referred to, and the due process clause of the Constitution has yielded because of these necessities. However, the practical necessities there involved are not encountered in the instant case. We believe that we are entitled to notice judicially that as a practical matter individual assessments are finally fixed by the local and county boards of equalization and that the instance is rare that the state board will attempt to determine an individual's assessment. We have made some individual research, and observe in most, if not all, instances, where the power to raise individual assessments is given to a state board of equalization, some form of notice to the individual is required. This observation is affirmed in the annotation in 24 A. L. R. on page 346. We therefore are of the opinion that practical necessities do not interfere with giving the individual notice when it comes to raising his individual assessment by the state board of equalization. We are of the opinion that,

in so far as there has been an attempt to give to the state tax commission, or any other body, the power to increase individual assessments, without providing for some notice to the individual, other than the fixing of the time for the meeting of the board, the statute is unconstitutional. This holding has precedent in this state in the case of Avant v. Flynn, supra, wherein this court in referring to the power of the county board of equalization, said: "It no doubt is contended upon the part of the board that the statute gives absolute power to reassess property as it may choose. As the statute fixes the time when the board shall meet, it may exercise its powers without giving notice to the owner of property. This position seems untenable, because, if this were the case, it would be incumbent upon every tax-payer in the county to be at the meeting of the board, and watch their proceedings during their session, in order to protect his right of property. It certainly would be dangerous to establish such a precedent, and it can hardly be supposed that the legislature intended to confer such a power upon the board; and, if it did, we could hardly uphold such an enactment."

The above reasoning, when applied to the state board of equalization, had added force, because of the fact that the state board meets in only one place in the state and perhaps hundreds of miles from the county in which the individual, whose assessment is sought to be increased, resides, and the meeting of the state board is a protracted meeting extending over several weeks. The statute, in fixing the time of meeting of the board, gives no protection to the taxpayer because it would not be reasonable to expect that every taxpayer is to wait upon the board at all times to see if his taxes are increased. No useful purpose would be served in attempting to discuss the many cases cited by either plaintiff or defendants. There is a comprehensive review of practically all of the cases in the annotation in 24 A. L. R. 331.

There is one other question presented by this record. What is the effect of the fact that, before the increase was made, notice was actually given to the plaintiff and an opportunity of being heard upon the merits of the proposed increase was actually afforded the plaintiff? These facts do not go to the constitutionality of the law itself, because in determining whether or not the law is unconstitutional we look, not to what has actually been done

under the law, but what the law authorizes to be done under its provisions. See Minneapolis Brewing Co. v. McGillivray (C. C.) 104 F. 258; State v. Miller, 146 Iowa 521, 124 N. W. 167; Beatrice v. Wright, 72 Neb. 689, 101 N. W. 1039; Matter of Ellard, 62 Misc. Rep. 374, 114 N. Y. S. 827; Meade v. Dane Co., 155 Wis. 632, 145 N. W. 239; State v. Stark Co., 14 N. D. 368, 103 N. W. 913.

"The law authorizing the proceedings must require notice or it will be unconstitutional. It is not enough that a person may by chance have notice, or that he may, as a matter of favor or courtesy, have a hearing." 12 C. J. 1229, and cases cited.

The law itself, therefore, being unconstitutional, in so far as it purported to vest this power to increase individual assessments without prescribing notice, was in fact no law under which the state board could act in increasing this assessment. The authority of the board is purely statutory, and whether a board has power to increase individual assessments depends wholly upon the terms of the statute. Cooley on Taxation (4th Ed) vol. 3, page 2425. There being no law under which the board could act, their actions were without authority and of no effect. This court in the case of Avant v. Flynn, supra, held that, because the appellants there appeared before the board and protested, they could not thereafter complaint that the law there under consideration was unconstitutional, in that it provided no notice to the taxpayer of the intention to raise his assessment. This holding, we believe, because of what has heretofore been said, to be erroneous, and to this extent that case is overruled. The above holding in the case of Avant v. Flynn could perhaps be justified where the statute requires notice and no notice or defective notice is given, but that is not the situation here, nor was it in that case.

"It is not enough that in fact the tax-payer [whose taxes it is proposed to increase] does have some notice or information, for the law must provide for notice, or else no legal notice can be given. * * * A notice not authorized by law is in legal contemplation no notice." Kuntz v. Sumption, 117 Ind. 1, 19 N. E. 474, 2 L. R. A. 655.

We are of the opinion, therefore, that the acts of the division of taxation, the board of equalization, or whatever body it was

that attempted to increase this individual assessment of the plaintiff, were without authority or jurisdiction and were therefore void. Let formal judgment be entered accordingly.

CAMPBELL, P. J., and POLLEY and WARREN, JJ., concur.

ROBERTS, J., disqualified and not sitting.