---

[No. 6565.]

SCHWARTZ v. PECPLE.*

*Error to Denver District Court*—Hon. GEO. W. ALLEN, Judge.

Mr. JUSTICE GABBERT dissenting:

I fully concur with the conclusion that the local option act is constitutional, but do not agree with the construction given it. It is assumed in the opinion of Mr. Justice Bailey that the object of the act was to facilitate the creation of "anti-saloon territory," and, acting upon this assumption, it is sought to give the act a construction which will effect this purpose. The assumption is unwarranted. The premise upon which the act is construed is wrong, and necessarily an erroneous conclusion is the result. The settled rules to be observed in the construction of a statute require that possible interpretation to be given which will render it effective, and effect the purpose of the legislative intent, if such intent can be reasonably inferred. It is also a fundamental

* The opinion of the court will be found at page 239 of vol. 46.

rule of interpretation that every law is adopted as a whole, and while a section, standing alone, might seem of doubtful import, yet it may be made plain by comparison with other clauses or portions of the same law, and finally, the purpose of a law is to be considered in its interpretation, and to this end, we may take into consideration the object which prompted its enactment.

The act defines what certain political subdivisions mentioned shall include, and defines the lowest to be a "precinct," which means "any voting precinct or election precinct in an election district or ward." It then provides that in the clause—"Shall this..........become 'Anti-Saloon Territory?'—the proper word shall be inserted in the blank space so as to designate the political division or subdivision intended to be designated as 'anti-saloon territory.' "

Sec. 2 of the act provides: "Upon the filing in the office of the clerk at least thirty days before an election of a petition as in this act provided, directed to such clerk, containing the signatures of qualified electors of any political subdivision in number not less than forty per cent. of the total vote cast in such political subdivision at the last general election therein, for the purpose of submitting to the voters of such political subdivision the proposition; 'Shall this........become "Anti-Saloon Territory"?' said proposition shall be submitted at such election, as in this act provided, to the voters of such political subdivision, and if a majority of qualified electors voting upon said proposition shall vote 'Yes,' such political subdivision shall become 'anti-saloon territory.' " Impliedly it follows, that if a majority vote "No," it shall not.

It is thus apparent that the purpose of the act was to confer upon the qualified voters of each of the political subdivisions named the right to determine

for themselves whether or not saloons could be maintained within such subdivision. Each subdivision is recognized as an independent entity, and necessarily, each may determine its policy with respect to saloons. In other words, the purpose of the act was to confer upon voters within specified political subdivisions, beginning with an election precinct, the option of permitting or inhibiting the maintenance of saloons' therein, and the act as designated by the compilers of the laws of 1907 and as spoken of and generally understood by the people, is a "local option" act, with respect to the sale or inhibition of intoxicating liquors. This is the important feature of the act to bear in mind when interpreting its provisions. Notwithstanding this special feature of the law, and the undoubted purpose of the legislature to confer upon voters within the prescribed political subdivisions the right of "local option" with respect to saloons, it is determined that because the vote as a whole in ward twelve was "dry," that the vote of precinct four, though "wet," does not avail because the ward controls. This construction is not only antagonistic to the local feature of the act, and deprives the voters of a political subdivision included within a greater of the right of local option, or compels them to submit to the result of a vote which is in no sense local, so far as they are concerned, but renders the act inharmonious, and permits voters to vote upon a question which they cannot settle or determine for themselves.

Let us see if there is anything in the act following that to which reference has been made justifying the construction given it. Following the provision of sec. 2 above quoted, there is a provision which counsel for the people concede permits an election in a ward and a precinct therein to be held simultaneously. The propositions to be voted upon in such cir-

cumstances are entirely separate and independent, originated by different petitions, and voted upon separately. What was the purpose of this provision? It was to preserve the right of local option to the voters of the precinct. This was so clearly the purpose when considered in connection with that portion of the act preceding, that if there was any doubt before regarding the right of the voters of a precinct to determine for themselves the question of whether saloons should be maintained within their precinct, that doubt is at once removed. But it is said that sec. 7 of the act defeats the right of the voters in a precinct, when voting simultaneously at an election in the ward embracing such precinct to have the result of their vote control, unless it is in favor of making the precinct anti-saloon territory. Courts must, if possible, so construe a statute as to avoid absurd results. To hold that when it appears that the right of local option was conferred upon a precinct the decision of the voters, as evidenced by their vote, should not control, unless registered one particular way, is unreasonable, deprives voters of a precinct of a right conferred, and should not be so declared unless there is no escape from such construction.

But, aside from this consideration, the purpose of sec. 7 is not to declare what shall be "anti-saloon territory," as evidenced by the result of an election held simultaneously in a ward and a precinct therein, but to declare that where anti-saloon territory is created in a political subdivision, it shall remain such, notwithstanding a change in the boundaries thereof until changed by the method prescribed in the section following. Further than this—this section must be construed in connection with those preceding. Its language must be read by the light

which they afford and we must still bear in mind
the purpose of the act. Thus considered it is plain
that the provision of sec. 7, to the effect that terri-
tory within any political subdivision which has be-
come "anti-saloon territory" shall continue to be
such throughout its entire extent, does not mean all
the territory embraced within such political subdivi-
sion, but only means so much thereof as has become
anti-saloon territory where simultaneous elections in
a ward and precinct therein have been held, as deter-
mined by the independent result of the election in
the respective subdivisions. This view harmonizes
the act and carries out the intent of the legislature
to confer upon the voters of specified political sub-
divisions the right of local option. We have often
held that if a later section, standing alone, will
admit equally of two constructions, by one of which
the entire act may be harmonized and the intent car-
ried out, while the other will create discord between
the different provisions, the former should be
adopted.

It is clear, from the language of the act construed
as a whole, that its prime purpose was to confer upon
the voters of specified political subdivisions, begin-
ning with an election precinct, the right to determine
for themselves whether saloons might be maintained
within the territory of the subdivision voting on the
subject. The construction given by the majority of
the court entirely destroys this feature of the act,
and is contrary to the intent of the general assembly
in passing it.

In my opinion, the result of the vote in precinct
4 should control, and for this reason the judgment of
the district court should be reversed and the cause
remanded, with directions to dismiss the proceedings
against the plaintiff in error.

'Mr. JUSTICE HILL dissenting:

That the local option act (so called) is constitutional I have not the slightest doubt concerning, but I cannot agree with the construction put upon this statute by Mr. Justice Bailey.  I fully concur in the views expressed by Mr. Justice Gabbert upon this question, and in addition to what he has stated, while it may not be proper to do so in all cases, in order to secure any aid to be thus acquired in my efforts to arrive at the real intention of the legislature I have examined the journals concerning the history of this act.  And while it is true, as stated in the majority opinion, ''in the original bill the county was enumerated as one of the political subdivisions to be affected by the local option law, but was stricken out before final passage,'' it is also true that the original bill did not provide for a separate election upon the same question in a precinct within a ward at the same time the question was submitted to the voters of the ward.  This privilege was thereafter added by amendment to the bill—Senate Journal, 1907, page 210.  And in my opinion, it can be well said ''it may be properly assumed that the legislature understood and intended (when during the consideration of the original bill they added this amendment) that where a separate vote was taken in the precinct at the same time and upon the same subject as the vote in the ward as a whole, the smaller unit would control, despite contrary action in the ward.  No other inference can be fairly drawn.''

Besides, sec. 2 of the act provides:

''No precinct of a ward shall for the same election be included in more than one petition covering contiguous territory less than a ward, but more than one precinct.''

This part of sec. 2 was also added by amendment to the original bill—Senate Journal, 1907, page 210. I suggest if the position contended for in the majority opinion is correct and it was intended that the vote in the smaller unit was not to control, why this prohibition of a precinct being included in more than one petition covering contiguous territory less than a ward? For instance, if, as contended, the result of an election in the precinct is to be binding if decided one way and not if the result is the other way, why not have allowed a precinct to be included with others in two petitions covering less than a ward and if the result of the election in the territory covered by one was not in the affirmative and the other was, or *vice versa,* then the precinct would be dry in either case. But we are confronted with a direct prohibition against securing anti-saloon territory in this manner, although it would tend to facilitate the establishment of such territory, which it is claimed the act as a whole was intended to do, and which would be just as consistent and more so than holding that the result of the vote in the precinct did not control when the statute has specifically provided for such an election. By giving full effect to these amendments prohibiting a precinct (except by itself) from being included in more than one petition and providing for a separate and distinct vote in a precinct at the same time the question is submitted in the ward when considered with the remainder of the act, construed as a whole, thus harmonizing apparently irreconcilable conflicts in it, so as to give effect to the whole and every part thereof, to my mind conclusively establishes the legislative intent to allow the separate vote in the precinct to control its policy, regardless of the result in the ward election, and which compels me reluctantly to dissent from the views of the majority.