[Criminal No. 898. Filed March 22, 1941.]

[111 Pac. (2d) 622.]

THE STATE OF ARIZONA, Appellant, v. C. M. MENDERSON, Appellee.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General; Mr. Richard F. Harless, County Attorney, and Mr. Anthony T. Deddens, Deputy County Attorney, for Appellant; and Mr. Joseph A. Padway, of Washington, D. C., of Counsel.

Mr. Lynn M. Laney and Mr. Grant Laney, for Appellee.

ROSS, J.—This case involves the constitutionality, as well as the construction, of an initiated measure passed by the vote of the electors of the state in 1915 and is found in the Arizona Code of 1939 as sections 43–1606 and 43–1607. The first section defines a blacklist as a medium of information communicated by one employer of labor to other employers of labor to discharge or not to employ certain identified persons "whereby the laborer is prevented or prohibited from engaging in a useful occupation." The next section, and the one immediately for consideration, as far as material, reads as follows:

"43–1607. *Violations by officers of corporations defined—Penalty.*—Any employer, boss, superintendent, manager, officer or other agent of any company, corporation, syndicate, partnership or society who shall command or persuade any person to give a photograph, or to fill out any written or printed form, or to make any verbal statements, or any other method or means of identification as to whom his or her former employer was; or any employer, boss, superintendent, manager, officer or other agent who shall discharge any person or persons on account of his or her affiliation with or membership in any corporation, organization or society, or because of former discharge of, or because of any blacklist of, any former employer, shall be guilty of a felony, and upon conviction thereof, shall be imprisoned not less than one (1) year nor more than five (5) years, and shall be liable in damages to any person or persons injured by such violation to the amount of not less than one thousand dollars ($1,000), to be recovered by civil action."

C. M. Menderson, the appellee, was charged by information with discharging from his employment one Simon M. Mead on account of his being a member of a labor union. His demurrer to the information challenged the statute on several grounds. The first is that it conflicts with the due process clauses of the State and Federal Constitutions, in that it interferes with the liberty of contract and is an unwarranted restraint upon the right of contract. Sec. 4, art. II, state Const.; 14th Amendment to Constitution of the United States.

Another is that it is class and special legislation violative of section 13, article II, and section 19, part 2 of article IV of the State Constitution.

It was also urged that the statute defining the crime charged in the information is so indefinite and vague as to deny due process. 14th Amend. U. S. Const. and sec. 4, art. II, state Const., *supra.*

The demurrer was sustained, and the state has appealed.

We have come to the conclusion that the last point is well taken and, that being so, it will not be necessary to consider the other two.

It will be observed that the applicable provision of the statute (sec. 43–1607) reads:

"Any employer . . . who shall discharge any person or persons on account of his or her affiliation with or membership in any corporation, organization or society . . . shall be guilty of a felony. . . . "

Discharge for membership in or affiliation with a labor union is not mentioned and therefore not specifically condemned. Such unions are recognized as organizations and societies and are sometimes corporations. The words "corporation, organization or society" do, and doubtless were intended by the lawmakers to cover and include labor unions. So the act charged in the informations falls within the language of the statute, as do also many other acts. For instance, while the employer is forbidden the right to discharge an employee on account of his membership in or affiliation with a lawful labor union, he is also forbidden, at the risk of committing a felony, to discharge from his employment a known Communist, Ku Kluxer, or a member of any other subversive organization or society. The offense is in discharging a member of a corporation, organization or society because of his membership. That may not be done, however provocative or urgent the necessity. An employer, as suggested by appellee, could not discharge an employee-member of a corporation, organization or society operating in direct competition with him without violating the language of the statute and laying himself liable to a prosecution as a felon.

Objections also are made to that provision of the statute that makes it a felony for an employer to command or persuade an applicant for employment "to make any verbal statements . . . as to whom his . . . former employer was." This provision, we think, limits the right of free speech, which is protected by both the Federal and State Constitutions. 14th Amend. *supra;* sec. 6, art. II, state Const. It does more; it prohibits an employer from using the most natural means to find out what kind and how much experience, if any, the applicant possesses, and from following up the latter's statements by supplemental investigation.

The state contends that the statute was passed to frustrate the efforts of employers to defeat effective organization by employees of the state, and that it should be construed in that light. It says one of the evils aimed at was the act of employers discharging employees for membership in or affiliation with labor unions, and that the law should be construed as impliedly confined to that act. The question is, Can the court exclude from the language of the statute acts included therein as criminal. Can the court say the Legislature, when it made it a crime to discharge an employee for membership in an organization of Communists, for instance, did not mean it? Of course the statute does not expressly say *that* any more than it says it is a felony to discharge an employee on account of his membership in a labor union. However, if the statute covers one of these acts, it covers the other and the court cannot construe the effect away by saying one was within the evil and the other was not.

Granting that some of the things forbidden by the statute are within the legislative power, it is clear that some are not. No one, we apprehend, would contend for a. moment that the Legislature could make it a

felony for an employer to ask of an applicant for employment who his former employer was, or to discharge an employee affiliated with a competitor in business, or on account of his membership in an organization whose members are enemy spies or saboteurs. That is what the literal language of the statute does.

██ The members of society at whose acts the law is directed must, in such circumstances, themselves determine in advance what they may legally do and what is forbidden. In 22 Corpus Juris Secundum, p. 72, Criminal Law, § 24, is found this language:

" . . . where the legislature declares an offense in words of no determinate signification, or its language is so general and indefinite that it may embrace not only acts commonly recognized as reprehensible but also others which it is unreasonable to presume were intended to be made criminal, the statute will be declared void for uncertainty; . . . "

What a statute commands or prohibits in the creation of new crimes should be very definite and easily understood by the common man. The rules in that respect, as announced by different courts, are collated in *H. Earl Clack Co.* v. *Public Service Commission,* 94 Mont. 488, 22 Pac. (2d) 1056, 1059, and we quote therefrom at length, as follows:

" . . . ' "Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts . . . to avoid." *United States* v. *Brewer,* 139 U. S. 278, 11 Sup. Ct. 538, 35 L. Ed. 190. "In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty." *Tozer* v. *United States* (C. C.) 52 Fed. 917. "If the Legislature undertakes to define by statute a new offense, and provide for its punishment, it

should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime.'' *United States* v. *Reese,* 92 U. S. 214, 23 L. Ed. 563.' *Burk* v. *Montana Power Co.,* 79 Mont. 52, 255 Pac. 337, 339.

'' 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' *Connally* v. *General Construction Co.,* 269 U. S. 385, 46 Sup. Ct. 126, 127, 70 L. Ed. 322.

'' 'The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.' *United States* v. *Capital Traction Co.,* 34 App. D. C. 592, 19 Ann. Cas. 68.''

In *State* v. *Diamond,* 27 N. M. 477, 202 Pac. 988, 991, 20 A. L. R. 1527, it is said:

''A further technical legal objection to the statute is its want of certainty. Where the statute uses words of no determinative meaning, or the language is so general and indefinite as to embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were in-

tended to be made criminal, it will be declared void for uncertainty."

This language was used in discussing a statute against subversive acts. The court found some of the acts condemned were or might be legal and others illegal. The law was held unconstitutional.

Different statements of the same rule are as follows:

" . . . Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible. But when the legislature declares an offense in words of no determinate signification, or its language is so general and indefinite as that it may embrace within its comprehension, not only acts commonly recognized as reprehensible, but others also which it is unreasonable to presume were intended to be made criminal, the courts, possessing no arbitrary discretion to discriminate between those which were and those which were not intended to be made unlawful, can do nothing else than declare the statute void for its uncertainty. . . . " *Czarra* v. *Board of Medical Supervisors,* 25 App. D. C. 443.

"A state statute penalizing the public display of a flag, banner, or device 'as a sign, symbol, or emblem of opposition to organized government,' being capable of construction as embracing conduct which the state may not constitutionally prohibit, is invalid as infringing upon the constitutional right of free speech, and accordingly repugnant to the guaranty of liberty contained in the 14th Amendment." *Stromberg* v. *California,* 283 U. S. 359, 51 Sup. Ct. 532, 75 L. Ed. 1117 (4th headnote), 73 A. L. R. 1484.

"If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. [Citing cases.] It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression. [Citing cases.] No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to

what the State commands or forbids. . . . " *Lanzetta v. New Jersey,* 306 U. S. 451, 59 Sup. Ct. 618, 619, 83 L. Ed. 888.

We think the statute violates the first principles of due process.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.