STATE, Respondent v. DOVE, Appellant

(67 N. W.2d 917)

(File No. 9423.   Opinion filed January 6, 1955)

O. E. Beardsley and W. A. Hackett, Watertown, for Appellant.

Ross H. Oviatt, State's Atty., Watertown, Ralph A. Dunham, Atty. Gen., and E. D. Barron, Asst. Atty. Gen., for State of South Dakota, Respondent.

LEEDOM, P. J.   Appellant is under sentence of death on conviction of the crime of first degree kidnaping.   The

statute under which he was tried provides a mimimum penalty of hard labor in the state penitentiary for life and a maximum penalty of death. On the recommendation of the jury as to which penalty should be imposed, as required by the statute, the trial judge imposed the death sentence on the jury's verdict of guilty.

The conviction grew out of an outrageous sexual attack by defendant on a nine year old girl. The "kidnaping" and "holding" were incident only to this attack and consisted of appellant's acts in luring the child from a city street to a secluded alley and there to forcibly gratify his sexual desires against the will of the thoroughly frightened and wholly overpowered and unwilling little girl. Immediately after the sexual attack she was released. It appears she was subjected to no more physical injury than appellant deemed necessary to quiet her and hold her while he carried out his evil plan, plus, of course, the physical injury, not aggravated, that resulted directly from his acts. Commission of the offense involved a degree of choking. As the child was released appellant threatened to kill her if she told what he had done. She found her parents without delay, made a disclosure of the occurrence, and appellant, a transient, was apprehended that same evening. Appellant has a bad record of prior offenses, two at least of which were sex crimes.

The kidnaping statutes, SDC Supp. 13.2701 and 13.-2701-1, provide:

"13.2701 Kidnapping: defined; kidnapping in the first degree; penalty. Whoever shall knowingly and unlawfully seize, confine, inveigle, decoy, kidnap, abduct; or carry away by any means whatsoever any person except as provided for in section 13.2701-1 hereof and shall be guilty of kidnapping in the second degree and who shall also ravish, or assault, or mutilate, or choke, or strangle or do other bodily harm or injury to the person so kidnapped as defined herein in such a manner and under such circumstances abhorrent to the public morals and common decency shall be guilty of kidnapping in the first degree and upon conviction shall be sentenced to death or to hard labor in the

State Penitentiary for life. Upon the trial of an indictment or information for kidnapping in the first degree there shall be submitted to the jury in addition to the customary form of verdict upon the quesiton of the guilt of the defendant or defendants, a supplementary form of verdict in the following language: 'We, the jury, duly impaneled in the above entitled cause have by our verdict found the defendant guilty do recommend that he be sentenced to _____.' Such supplementary form shall be submitted to the jury with reference to each defendant if there be more than one. If the jury find any defendant or defendants guilty they shall return into court as to each of said defendant a supplementary verdict in the form above designated, filling in the blank in the end thereof by the word 'death' or by the words 'life imprisonment' as the jury may see fit, such supplementary verdict or verdicts to be signed and returned in the usual manner. Judgment of death shall not be pronounced by the court upon any defendant in case of trial and conviction unless the jury so recommending and notwithstanding such recommendation by the jury the court may nevertheless pronounce judgment of life imprisonment. Upon a plea of guilty the court shall determine whether the punishment shall be death or life imprisonment and shall pronounce judgment accordingly.

"13.2701-1. Kidnapping further defined, second degree, penalty. Whoever shall knowingly and unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away by any means whatsoever and hold for ransom, reward or otherwise any person except in the case of a minor by a parent thereof or who having permitted or attempted the commission of a felony to prevent injury, apprehension, capture or identification of the wrongdoer, by fraud, force or fear compels another to accompany him (or her) or use another as a shield or hostage, shall be deemed guilty of kidnapping in the second degree and

shall be punished by imprisonment at hard labor in the State Penitentiary for life or by such imprisonment for any term not less than five years."

Appellant attacks the constitutionality of the first degree statute, SDC Supp. 13.2701, under which he was convicted.

This court has upheld the validity of SDC Supp. 13.2701-1. In State v. Strauser, 75 S.D. 266, 63 N.W.2d 345, we affirmed a judgment imposing a life sentence for second degree kidnaping. SDC Supp. 13.2701 attempts to create a first degree of kidnaping by upgrading the second degree. This is done by providing in effect that first degree kidnaping is committed when any person who has committed second degree kidnaping shall also "ravish, or assault, or mutilate, or choke, or strangle or do other bodily harm or injury to the person so kidnapped as defined herein **in such a manner and under such circumstances abhorrent to the public morals and common decency.**"

The penalty for second degree kidnaping may be a prison term as short as five years or as long as life. For first degree the penalty is either a prison term for life, or death.

██ ██ Courts should liberally construe the language used by the legislature in a criminal statute in an effort to carry out the legislative intention. The language used, however, must make reasonably certain what conduct is prohibited. Otherwise the statute is void. 22 C.J.S., Criminal Law, § 24. The rule is of special and obvious importance when the punishment involved is death. As Mr. Justice Rutledge said in his dissent in Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 669, 89 L.Ed. 944, "If words ever need to be clear, they do when they perform this function".

██ ██ There is no question but that the legislature may if it chooses provide a death penalty for offenders who do injury to a kidnap victim. The acts committed by appellant are also clearly within the range of crimes for which death is a lawful punishment. These, however, are not the questions before us. Rather the question we consider is this: Does this statute with reasonable certainty and exactness indicate what the injuries are that make the offense one of

first degree? If not, then the statute is void because conviction under it would be a denial of due process of law. "A statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application lacks the first essential of due process of law". 14 Am.Jur., Crim. Law, §§ 19, 22; and see State v. Northwest Poultry & Egg Co., 203 Minn. 438, 281 N.W. 753. If the statute is unconstitutional appellant's conviction cannot stand even though his atrocious offense is "abhorrent to the public morals and common decency" however this uncertain phrase may be interpreted. If the statute is bad then there is no crime of first degree kidnaping defined by the law of South Dakota. Quite obviously there can be no lawful conviction for commission of an offense that does not exist. Conviction under an unconstitutional statute is a nullity. 11 Am.Jur., Constitutional Law, § 150; Ex parte Siebold, 100 U.S. 371, 25 L.Ed. 717: State v. Diamond, 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527. This court recognized essentially the same principle in a civil case, Beveridge v. Baer, 59 S.D. 563, 241 N.W. 727, 84 A.L.R. 189.

The uncertainty of the statute grows out of the phrase italicized above, and which undertakes to define the kind of injury done to a kidnap victim that makes the offense one of first degree and automatically raises the penalty either to life imprisonment, or death. That is, the uncertainty as heretofore indicated is in this phrase (referring to harm done) "* * * in such a manner and under such circumstances abhorrent to the public morals and common decency".

In the first place it cannot be determined whether the phrase has reference only to the injuries included within the general term "other bodily harm or injury" or goes back of the general term and relates also to the enumerated specific injuries, i. e. "ravish", "assault", etc. It may be argued with some merit that the phrase does not relate to the specified injuries because it seems quite clear that to "ravish" would always be "abhorrent to the public morals" and the descriptive phrase as to the word "ravish" would be meaningless and therefore inapplicable. On the other hand if the phrase does not relate back to the specific enumerations then

a simple assault on a kidnap victim, that is the use of any force, would make the offense one of first degree. This, however, is a wholly unreasonable interpretation because in committing kidnaping in the second degree, force would necessarily be used in essentially all cases either in the taking or detention. Thus ·this interpretation would render the offense in the first degree· actually the same as the ·offense in the second degree and create a situation in which the law provides two different penalties for one wrongful act.

The uncertainty of the statute, however, goes deeper than indicated in the foregoing. If it be assumed, in a liberal construction of the language used, that the italicized phrase relates to both. the specific injuries such as "ravish" and those included in the general term "other bodily harm or injury" as well, then there arise grave doubts as to just what injuries inflicted on a victim make the offense one of first degree. The meaning of the phrase "abhorrent to the public morals and common decency" simply is not clear. The range of injuries to which it may apply is limited only by the viewpoints of the various persons having the words under consideration. By way of illustration one person may be of the view that the phrase has reference to injuries involving sexuality.Thus in ·the viewpoints of certain jurors, judges and prosecutors ever so slight an injury or assault in the nature of a sex offense would violate the statute and warrant death, whereas a much more serious injury not related to sex would leave the offender guilty of only second degree kidnaping subject to a penalty as low as five years imprisonment. Seeking for meaning of the phrase other persons might construe it to refer to any injury particularly offensive to human sensibilities, that is injuries in the nature of torture. Actually there is no clearly valid reason for assigning to the phrase special reference either to injuries resulting from sexual impulse or to torture. Nor can the phrase be assigned to any other special ·category of injuries with any better reason. If it has no valid reference to a special category, then it is wholly meaningless and any "bodily harm or injury" done the victim makes the offense one of first degree. This conclusion, however, is unreasonable because (1) the use of the phrase clearly indicates a leg-

islative intention to impose a limitation and (2) it could not have been the legislative intention to increase the penalty from that provided for second degree kidnaping, to the penalty of death for the slight aggravation of committing the mildest assault or the slightest bodily harm. Compare Musser v. State of Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562; State v. Diamond, supra, 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527; Ex parte Jackson, 45 Ark. 158; and see annotations 83 L.Ed. 893 and 70 L.Ed. 322.

■ Since it is impossible for the court to make any reasonable interpretation of the qualifying phrase, and therefore to determine with any certainty what acts were intended to constitute first degree kidnaping under SDC Supp. 13.2701, we hold the statute void. The judgment entered against appellant under such statute therefore must be and hereby is reversed.

All the Judges concur.